STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0861

JAMES GUERIN

VERSUS

THE TRAVELERS INDEMNITY COMPANY, Successor or Assignee
of THE TRAVELER'S INSURANCE COMPANY; EXXON MOBIL
CORPORATION; RADIATOR SPECIALTY COMPANY; LIBERTY
MUTUAL INSURANCE COMPANY; HIGHLAND HARDWARE &
GARDEN CENTER, INC.; and OLINDE HARDWARE & SUPPLY
CO., LLC, f/k/a Olinde Hardware and Supply Co., Inc.

Judgment Rendered: **FEB 2 1 2020**

* * * * * * *

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 672528

Honorable William A. Morvant, Judge Presiding

* * * * * * *

<table>
<tr><td>L. Eric Williams, Jr.<br>Lynn E. Williams, Sr.<br>Metairie, Louisiana<br>and<br>Tregg C. Wilson<br>Brett Robinson<br>Baton Rouge, Louisiana</td><td>Attorneys for Plaintiff/Appellant,<br>James Guerin</td></tr>
<tr><td>David M. Bienvenu, Jr.<br>Lexi T. Holinga<br>Melissa Jade Shaffer<br>Baton Rouge, Louisiana</td><td>Attorneys for Defendant/Appellee,<br>The Travelers Indemnity Co. (o/b/o<br>itself and The Travelers Insurance<br>Co.), in its capacity as an alleged<br>insurer of the Ethyl Corp. and its<br>alleged executive officers, Merlin<br>Koenecke (dec.), W.C. Strader (dec.),<br>J.H. Huguet (dec.), and F.C. Holmes<br>(dec.)</td></tr>
</table>

Andrew Eversberg
Baton Rouge, Louisiana

Attorney for Defendant/Appellee,
Liberty Mutual Insurance Company

Susan B. Kohn
Douglas R. Kinler
Casie Z. Davidson
New Orleans, Louisiana

Attorneys for Defendant/Appellee,
Olinde Hardware & Supply Co., LLC

\* \* \* \* \* \* \*

**BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.**

**PENZATO, J.**

Plaintiff-appellant, James Guerin, appeals a trial court judgment that sustained exceptions raising the objection of prescription. We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 19, 2015, Mr. Guerin was diagnosed with Multiple Myeloma ("MM"). On August 13, 2018, he filed this lawsuit alleging that his MM was caused by occupational exposure to benzene and benzene-containing products while working as a shift foreman at Ethyl Corporation from 1964 through 1983. Named as defendants were The Travelers Indemnity Company, in its capacity as the insurance provider for Ethyl and its deceased executive officers; Exxon Mobil Corporation, which manufactured, supplied, sold, and distributed benzene-containing products; Liberty Mutual Insurance Company, in its capacity as the liability insurer for Insilco, which manufactured and sold benzene-containing products; and Olinde Hardware and Supply Co., LLC, a distributor, seller, and supplier of benzene-containing products (collectively defendants).[1]

In his petition, Mr. Guerin alleged that while he learned of his diagnosis of MM on March 19, 2015, the prescriptive period did not begin until after June 2018 when he learned of a possible connection between the benzene he was exposed to and his illness from an advertisement. According to Mr. Guerin, the defendants concealed and misrepresented the health hazards of benzene, which led him "to a course of inaction in the enforcement of his right by reason of some concealment conduct on the part of the defendants or because of their failure to perform some legal duty whereby [he had] been kept in ignorance of his rights."

Defendants filed peremptory exceptions raising the objection of prescription on the grounds that Mr. Guerin's claims were prescribed on the face of the petition

---

[1] Radiator Specialty Company and Highland Hardware & Garden Center, Inc. were also named as defendants. They are not involved in this appeal.

3

because he filed his lawsuit more than three years after his diagnosis, and his petition failed to establish any basis to invoke the doctrine of *contra non valentem*. Following an evidentiary hearing, the trial court sustained the exceptions of prescription, and signed a judgment on May 6, 2019, dismissing Mr. Guerin's claims against the defendants.

Mr. Guerin appealed, alleging that the trial court erred by sustaining the defendants' exceptions of prescription by relying on the date of diagnosis as constructive knowledge for the commencement of the one year prescriptive period accruing against plaintiff's underlying causes of action without considering the reasonableness of plaintiff's action or inaction in light of his education, intelligence, and the nature of defendants' conduct after plaintiff's treating physician told the plaintiff he did not know the cause of the MM.[2]

## LAW AND DISCUSSION

The objection of prescription may be raised by a peremptory exception. La. C.C.P. art. 927A(1). Evidence may be introduced to support or controvert an exception of prescription. La. C.C.P. art. 931. If evidence is introduced at the hearing on the peremptory exception, the trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. *Clavier v. Our Lady of the Lake Hosp. Inc.*, 2012-0560 (La. App. 1 Cir. 12/28/12), 112 So. 3d 881, 888, writ denied, 2013-0264 (La. 3/15/13), 109 So. 3d 384. Pursuant to this standard, the trial court's ruling must be affirmed unless a reasonable factual basis does not exist for the finding of the trial court, and the record establishes that the finding is clearly wrong. *Expert Riser Solutions, LLC v. Techcrane International, LLC*, 2018-0612 (La. App. 1 Cir. 12/28/18), 270 So. 3d 655, 660. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether

---

[2] Pursuant to a partial voluntary motion to dismiss filed by Mr. Guerin, the appeal was dismissed as to Exxon Mobil Corporation.

the factfinder's conclusion was a reasonable one. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So. 2d 880, 882 (La. 1993).

Delictual actions are subject to a liberative prescription of one year, which commences to run from the day injury or damage is sustained. La. C.C. art. 3492. Louisiana jurisprudence adopts the doctrine of *contra non valentem* to the effect that prescription does not commence running until the facts necessary to state a cause of action are known or reasonably knowable to the plaintiff. *Sharkey v. Sterling Drug, Inc.*, 600 So. 2d 701, 713 (La. App. 1 Cir.), writs denied, 605 So. 2d 1099, 1100 (La. 1992).

There are four recognized categories of *contra non valentem*: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the plaintiff from suing or acting; (3) where the defendant himself has done some act effectually to prevent the plaintiff from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. *Kirby v. Field*, 2004-1898 (La. App. 1 Cir. 9/23/05), 923 So. 2d 131, 135, writ denied, 2005-2467 (La. 3/24/06), 925 So. 2d 1230. Mr. Guerin contends that there are two categories of *contra non valentem* that apply in this case, the "discovery rule," or the fourth category, and the third category.

We first address the fourth category of *contra non valentem*, commonly known as the discovery rule. *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 245. The key inquiry in most *contra non valentem* cases is the commencement date of the prescriptive period under the discovery rule. *Doe v. Delta Women's Clinic of Baton Rouge*, 2009-1776 (La. App. 1 Cir. 4/30/10), 37 So. 3d 1076, 1080, writ denied, 2010-1238 (La. 9/17/10), 45 So. 3d 1055. The

5

doctrine itself is based on the theory that when the claimant is not aware of the facts giving rise to his or her cause of action against the particular defendant, the running of prescription is for that reason suspended until the tort victim discovers or should have discovered the facts upon which his or her cause of action is based. *Id.* It is often difficult to identify a precise point in time at which the claimant becomes aware of sufficient facts to begin the running of prescription. Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. *Id.* On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury. <u>See</u> *Id.* at 1081. When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction. *Jordan v. Employee Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987).

Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. *Campo v. Correa*, 2001-2707 (La. 6/21/02), 828 So. 2d 502, 510. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. *Id.* at 511. The question is whether, in light of plaintiff's own information and the diagnoses he received, the plaintiff was *reasonable* to delay in filing suit. *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1157 (La. 1993).

Here, the issue is whether Mr. Guerin's MM diagnosis was sufficient notice to excite attention and place him in the position to inquire whether he was the victim of a tort. Appellants contend that prescription began to run when Mr. Guerin was diagnosed with MM on March 19, 2015. Mr. Guerin argues that prescription did not begin to run until June of 2018 when he saw a lawyer's advertisement linking MM to exposure to benzene.

By agreement of the parties, portions of Mr. Guerin's deposition were introduced into evidence at the hearing. According to Mr. Guerin, he did not learn of the connection between MM and exposure to benzene until he saw an advertisement in the June 2018 Country Roads Magazine. He testified that he initially had cancer in 2005, and when he was diagnosed with MM in 2015, he questioned his physician about why he had gotten cancer twice and what caused it. Mr. Guerin testified his physician "didn't really have a good explanation", and told Mr. Guerin that he did not know where it came from. There was a suggestion that the cancer could be related to genetics. He testified that in 2015, he asked his doctors about the possible causes of MM because he was curious. He further testified that even after he was diagnosed and was undergoing treatment he remained curious about the causes of his cancer.

Mr. Guerin testified that he was a high-school graduate. During the time period between 2015 and 2018, Mr. Guerin was a daily reader of the morning Advocate newspaper. He testified that while he currently had a computer with internet access, he did not have a computer at his home in 2015. He did have a computer for his business, and access to his son's computer. He has had internet access and an email since 2016, and knows how to search the internet.

Between 2015 and 2018, Mr. Guerin did not have any conversations with any person employed by Ethyl about benzene and the types of cancers that might be caused by benzene, nor did anyone from Ethyl in any way hinder his ability to hire a lawyer or investigate the causes of MM.

Our Louisiana Supreme Court has held that prescription begins to run upon injury or damage such as receiving a diagnosis. See Cole, 620 So. 2d at 1157-58. This court has similarly held that in the context of a toxic substance tort, prescription did not begin to run when the plaintiff was exposed to the toxic substance, but rather at the time he was diagnosed with acute myelogenous

7

leukemia, which was when he had knowledge that he suffered an actual and appreciable injury. *Mulkey v. Century Indem. Co.*, 2018-1551 (La. App. 1 Cir. 8/7/19), 281 So. 3d 717, 726, writs denied, 2019-01534 and 2019-01576 (La. 11/25/19), 283 So. 3d 495.

In *Tenorio v. Exxon Mobil Corp.*, 2014-814 (La. App. 5 Cir. 4/15/15), 170 So. 3d 269, 275, writ denied, 2015-1145 (La. 9/18/15), 178 So. 3d 149, the Louisiana Fifth Circuit Court of Appeal addressed the issue of whether a cancer diagnosis constituted constructive knowledge sufficient to commence the running of prescription. The plaintiff was diagnosed with throat cancer in November 2009, and filed suit on April 17, 2014, alleging that his throat cancer was caused by workplace exposure to radioactive material. *Id.* at 272. He argued that *contra non valentem* applied because he did not have knowledge of the cause of his throat cancer until he was informed by a former co-worker in August 2013 that he may have been exposed to radiation at his former workplace. *Id.* at 275. The court rejected his argument, finding that his 2009 diagnosis "was constructive notice sufficient to put [the plaintiff] on guard and to call him to inquire into the cause of his condition." *Id.* The court noted that *contra non valentem* does not protect a plaintiff's claim from the running of prescription when his own willfulness or neglect caused his ignorance. The court concluded that "[a]lthough [the plaintiff] claims to not have had knowledge of the radiation exposure at [his former workplace], the commencement of prescription began when he should have discovered the facts upon which his cause of action was based, which was in November 2009." *Id.*

Similarly, in *Lennie v. Exxon Mobil Corp.*, 2017-204 (La. App. 5 Cir. 6/27/18), 251 So. 3d 637, 648, writ denied, 2018-1435 (La. 11/20/18), 256 So. 3d 994, the court concluded that a diagnosis of lung cancer was constructive notice sufficient to put the plaintiffs on guard and to call for them to inquire further into

8

the cause of the cancer, finding that their failure to make even a rudimentary inquiry appeared unreasonable.

Mr. Guerin seeks to distinguish *Tenorio* and *Lennie*. He argues that *Tenorio* is not applicable because neither party introduced evidence and the court only examined the allegations set forth in the petition. He maintains that *Lennie* is distinguishable because in this case, Mr. Guerin pled concealment, misrepresentation, suppression, and omission. Mr. Guerin further contends that *Mulkey* is on point and the facts are identical to those in this case.

We agree that the facts in *Mulkey* are nearly identical to those presented in this case. In *Mulkey* this court concluded that the plaintiff knew of his damages, *i.e.*, that he had suffered an actual and appreciable injury, at the time he was diagnosed with acute myelogenous leukemia and timely filed his claim on March 3, 2014, within one year from March 26, 2013, the date of his diagnosis. *Mulkey*, 281 So. 3d at 726. We recognize that the court in *Tenorio* was limited to an examination of the allegations set forth in the petition. In this case, evidence was introduced at the hearing on defendants' exceptions; thus, we review that evidence in addressing the central issue in this case, which is the reasonableness of Mr. Guerin's actions in light of the knowledge he possessed.

Mr. Guerin's deposition testimony reveals that his MM diagnosis on March 19, 2015, was his second cancer diagnosis. At the time of his first cancer diagnosis in 2005, Mr. Guerin questioned the cause of his cancer and sought additional information from a specialized clinic in New Orleans, Louisiana. Upon receiving his second diagnosis in 2015, he was curious as to the cause, and questioned his doctor about possible causes.

Mr. Guerin is a high-school graduate. After his employment with Ethyl, he had a florist business, where he had access to a computer. He has had a home computer with internet access and an email since 2016, and knows how to search

the internet. In addition, he was a daily reader of the newspaper. Mr. Guerin's petition recognizes that the health hazards of benzene have been recognized for over one hundred years, and the development of MM as a result of chronic benzene exposure has been well documented.

Although Mr. Guerin testified that he remained curious about the causes of his cancer after he was diagnosed and while he was undergoing treatment, he argues that it was reasonable for him to simply accept his physician's explanation in 2015 that, "well, you know, you have it, and I don't know where it came from," and make no further inquiries into the cause of his condition until coming across a lawyer's advertisement in a magazine in June 2018. We find that Mr. Guerin's inaction was not reasonable in light of the knowledge that he possessed, and that his diagnosis in 2015 was constructive notice sufficient to put him on guard and to call him to inquire into the cause of his condition. See *Tenorio*, 170 So. 3d at 275. Thus, we find the fourth category of *contra non valentem* does not provide justification for Mr. Guerin's failure to file suit within one year of his diagnosis of MM.

Mr. Guerin argues that *Lennie* is distinguishable from this case, because he pled concealment, misrepresentation, suppression, and omission. This argument involves the third category of *contra non valentem*, which applies to cases wherein the defendant has concealed the fact of the offense or has committed acts (including concealment, fraud, misrepresentation, or other "ill practices") that tend to hinder, impede, or prevent the plaintiff from asserting his cause of action, as long as the plaintiff's delay in bringing suit is not willful or the result of his own negligence. *Marin*, 48 So. 3d at 251-52. However, while Mr. Guerin may have pled such acts, he did not introduce any evidence at the hearing of the defendants' exceptions that any of the defendants actually committed such acts. In fact, the only evidence introduced at the hearing was that Mr. Guerin did not have any

conversations with any person employed by Ethyl about benzene and the types of cancers that might be caused by benzene, nor did anyone from Ethyl in any way hinder his ability to hire a lawyer or investigate the causes of MM.

Accordingly, we find that the trial court did not manifestly err in concluding that Mr. Guerin's claims against defendants have prescribed.

## CONCLUSION

For these reasons, the trial court's May 6, 2019 judgment sustaining the peremptory exceptions raising the objection of prescription filed by defendants, The Travelers Indemnity Company, Liberty Mutual Insurance Company, and Olinde Hardware and Supply Co., LLC, and dismissing all claims by James Guerin against them is affirmed. Appeal costs are assessed to plaintiff, James Guerin.

**AFFIRMED.**